IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TIMOTHY M.,[1]                                            Case No. 6:20-cv-01777-YY

   Plaintiff,                              OPINION AND ORDER

  v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

   Defendant.

YOU, Magistrate Judge.

  Plaintiff Timothy M. seeks judicial review of the final decision by the Commissioner of

the Social Security Administration ("Commissioner") denying his application for child's

insurance benefits and supplemental security income ("SSI") under Title XVI of the Social

Security Act ("Act"), 42 U.S.C. § 401-33.  This court has jurisdiction to review the

Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g).  For the reasons set forth below,

that decision is REVERSED and this matter is REMANDED for immediate award of benefits.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

PAGE 1 – OPINION AND ORDER

Plaintiff applied for child's insurance benefits[2] and protectively filed for SSI benefits on July 24, 2018, alleging disability beginning on April 16, 2015. Plaintiff's claims were initially denied on March 14, 2019, and upon reconsideration on June 17, 2019. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on February 27, 2020. At that hearing, plaintiff and a vocational expert testified. The ALJ issued a decision on March 31, 2020, finding plaintiff not disabled within the meaning of the Act. Tr. 38.

The Appeals Council denied plaintiff's request for review on August 17, 2020. Tr. 1. Therefore, the ALJ's March 31, 2020 decision is the Commissioner's final decision and is subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

---

[2] Plaintiff turned 18 years old in August 2017. *See* Tr. 521.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 16, 2015, the alleged onset date. Tr. 40. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: "epilepsy; attention-deficit hyperactivity disorder (ADHD); persistent depressive disorder with anxious distress and rule out of mood-congruent psychotic features; mild unspecified neurocognitive disorder; a moderate alcohol use disorder; rule out hallucinogen use disorder; a specific learning disorder with impairment in mathematics; and a specific learning disorder with impairment in reading (20 CFR 404.1520(c) and 416.920(c))." Tr. 41.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 20.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined that plaintiff could "perform a full range of work at all exertional levels but with the following nonexertional limitations: he can never climb ladders, ropes, or scaffolds. He must avoid all exposure workplace hazards. He can understand, remember, carry out and persist at simple,

routine, repetitive tasks. He can make simple work-related decisions. He can tolerate few if any changes in the workplace. He can perform no assembly-line pace work. He can tolerate only occasional contact with the general public." Tr. 43.

At step four, the ALJ found that plaintiff does not have any past relevant work. Tr. 47. At step five, the ALJ found that—considering plaintiff's age, education, work experience, and residual functional capacity—there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including janitor, landscape specialist, and cleaner housekeeper. Tr. 48. Thus, the ALJ concluded that plaintiff was not disabled.

Since this case was filed, plaintiff received a fully favorable decision regarding benefits. Mot. Remand, Ex. A-1, ECF 26-1. Based on that decision, plaintiff has filed an Alternative Motion for Sentence Six Remand, which is currently pending. ECF 27.

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) rejecting the opinion of Dr. Jeffrey Frank, and (2) rejecting his subjective symptom testimony.

## I. Medical Opinion Evidence

Plaintiff filed his application for benefits on July 24, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II, and 20 C.F.R. § 416.920c governs under Title XVI. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).

Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the

PAGE 4 – OPINION AND ORDER

Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we

gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

In his Treating Source Statement, dated February 3, 2020, Dr. Frank described that he had been treating plaintiff two times a year for almost five years. Tr. 902. Dr. Frank diagnosed plaintiff with epilepsy, which was corroborated by abnormal EEG results (TR 564-67), and prescribed lamotrigine for seizures. Tr. 902-03. Dr. Frank explained that plaintiff suffered one tonic clonic/grand mal seizure a month, with no warning, and experienced mental confusion and physical exhaustion for a 24-hour period that would result in him having to miss work two days per month. Tr. 904-06. Dr. Frank also noted that plaintiff sometimes suffered physical injuries from the seizures, Tr. 904, including cuts, bruises, soreness, and pain. Tr. 79, 338.

The ALJ rejected Dr. Frank's opinion that plaintiff would miss two days of work, stating:

> In arriving at the assessment of residual functional capacity in this decision, I have been partially persuaded by the opinion of Dr. Jeffery Frank, M.D., (18F), because his opinion is generally consistent with the overall evidence of record which shows that the claimant has a seizure disorder; however, I am not persuaded by the doctor's opinion regarding absenteeism because it is not consistent with the evidence which showed that the claimant's reported frequency seizures was generally consistent with a pattern of missed doses of medications.

Tr. 46. Elsewhere in her decision, the ALJ observed that plaintiff "was not always entirely consistent in taking his medications and 'may have missed a dose or two' around the time he experienced his seizures, and stopped taking his seizure medication because he did not want 'to be on medication." Tr. 44 (citing 5F/5, 14; 8F/1; 9F/1, 3; 12F/1, 7; 15F/5, 9).

The ALJ's findings mischaracterize the record. The record shows that plaintiff had his first seizure on April 16, 2015, while at high school, and was treated in the emergency room. Tr. 934. Plaintiff continued to have seizures, and on August 7, 2017, he was again admitted to the emergency room due to a seizure. Tr. 373. Plaintiff was prescribed lamotrigine; however, due

to continuing breakthrough seizures (*see* Tr. 394 (describing a seizure that occurred in July 2018), he began taking an extended-release dose of lamotrigine in September 2018.  Tr. 439.

At an October 25, 2018 appointment, plaintiff described having two seizures and admitted he "may have missed a dose or two around the time of seizure."  Tr. 396 (5F/5).  The chart notes also indicate that the seizures "occurred two weeks after starting Zoloft and 2 weeks after increase in Zoloft dose."  Tr. 396.  Plaintiff testified that he "stopped taking the Zoloft because it gave me seizures."  Tr. 76; *see id.* ("And when they upped the dosage that also started giving me seizures, too. . . [e]very time I took it, I'd have a seizure.").  However, chart notes written by Dr. Scott Johnson indicate, "I feel this is more coincidental than an effect of Zoloft." Tr. 398.  Nevertheless, the doctor increased plaintiff's lamotrigine dosage "due to breakthrough seizures."  *Id*.

On January 9, 2019, plaintiff reported that he had increasingly frequent seizures, and confirmed they occurred around his missed medication doses.  Tr. 439 (8F/1).  However, on June 4, 2019, plaintiff reported having a seizure, despite being "consistent and complaint with medications."  Tr. 445 (9F/1).  And on July 10, 2020, plaintiff reported that he was taking lamotrigine but "continue[d] to have breakthrough seizures despite escalating doses of lamotrigine."  Tr. 16.  Chart notes indicate that during his seizures, plaintiff experiences "loss of consciousness and drops without warning, is rigid all over, and then convulses."  Tr. 13.  Chart notes further indicate that, because of the continuing breakthrough seizures, "dual antiepileptic therapy" might need to be considered.  Tr. 24.

On July 17, 2019, plaintiff was again admitted to the emergency room for a seizure.  Tr. 877.  Chart notes "state[] he has been taking lamotrigine," and there is no indication he was not taking his medication.  Tr. 877.  On October 4, 2019, plaintiff had a seizure on a bus (Tr. 860),

and reported he "has been out of his meds for a few days."  Tr. 863 (15F/5); *see also* Tr. 867

(15F/9) ("Patient reports not taking his Lamictal [i.e., lamotrigine, Tr. 14] for the past 2 days.").

However, plaintiff also reported that he otherwise had seizures "roughly once a month."  Tr. 867

(15F/9).  Furthermore, chart notes from December 13, 2019, indicate that plaintiff "has been

compliant on medications since last seizure."  Tr. 471 (12F/1).  Finally, chart notes from

February 11, 2020, indicate that plaintiff had a seizure, and records do not indicate that plaintiff

was not taking his medication at that time.  Tr. 908.

      In addition to the information in the medical record, plaintiff testified at his hearing that,

while he had seizures when he had missed his medication, "I still have them, even when I have

my medications."  Tr. 71.  Plaintiff explained that his medication "doesn't always help."  Tr. 69.

      Thus, over a period spanning approximately five years, there are only three indications

that plaintiff had seizures when he did not take his medications; otherwise, the record reveals that

plaintiff regularly had seizures once a month even when he took his medication.  And,

importantly, there is no indication that plaintiff was not taking medications when he had monthly

seizures for three consecutive months in December 2019, and January and February 2020.  *See*

Listing 11.02 (describing epilepsy as characterized by "[g]eneralized tonic-clonic seizures . . .

occurring at least once a month for at least 3 consecutive months"); Tr. 904 (Dr. Frank's Treating

Source Statement describing seizures in November and December 2019, and January 2020); Tr.

908 (chart notes indicating plaintiff had a seizure in February 2020).

      As for the ALJ's reliance on plaintiff's statement that he did not want "to be on

medication," that statement is from an October 25, 2018 chart note that indicates plaintiff was

referring to a different medication, zonisamide, which he "discontinued . . . after 3 months due to

not wanting to be on medication."  Tr. 405 (5F/14).  Importantly, the next sentence in the chart

note states that plaintiff "would like to start treatment," and he started a titration of lamotrigine, the medication that was consistently prescribed for seizures throughout the course of his treatment.  Tr. 405.

In sum, the ALJ's decision is not supported by substantial evidence—the ALJ "selectively relied on some entries . . . and ignored the many others that indicated" plaintiff suffered continuing monthly seizures even when he took his medication as prescribed.  *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ  "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment").  This was error.

## II.    Subjective Symptom Testimony

Plaintiff also contends the ALJ erred in rejecting his subjective symptom testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility

finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ found plaintiff's allegations "are not consistent with the medical record." Tr. 45. In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. However, a lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")).

When coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony.

*Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019)

(citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

Here, the ALJ cited plaintiff's activities of daily living to further discount plaintiff's testimony.

Tr. 45.  An ALJ may invoke activities of daily living in the context of discrediting subjective

symptom testimony to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that

the activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639

(9th Cir. 2007).

Specifically, the ALJ found that plaintiff's "alleged limitations are not fully supported by

his reported activities," including that he could "perform adequate self-care, prepare simple

meals, do household chores, play music with friends, exercise, play video games, go

snowboarding, use a computer, and go out to the store."  Tr. 45.  The ALJ also cited to the fact

that plaintiff admitted the reason he stopped attending GED classes was because his lost interest.

Tr. 46.  The ALJ found that "[t]hese activities indicate a higher level of functioning than that

alleged by the claimant."  Tr. 46.

But these activities have no bearing on plaintiff's monthly epileptic seizures.  Thus, other

than lack of consistency with the medical record, which cannot be the sole reason, the ALJ failed

to provide a specific, clear and convincing reason to discount plaintiff's subjective symptom

testimony.

## III.    Credit-as-True Analysis

When a court determines the Commissioner erred in some respect in making a decision to

deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or

without remanding the cause for a rehearing."  *Treichler v. Commissioner of Social Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).  In determining whether to

remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ improperly rejected Dr. Frank's opinion and plaintiff's subjective symptom testimony. Moreover, the record has been fully developed. Finally, if the improperly discredited evidence is credited as true, plaintiff would be entitled to benefits. The evidence in the record establishes that, due to his seizures, plaintiff would miss work two days per month, and a vocational expert testified that this "would be above the tolerance level of most employers" and plaintiff would be at risk of termination before long." Tr. 81. When the improperly discredited evidence is credited as true, it is apparent that plaintiff cannot maintain a full-time job due to his medical condition, which meets the characteristics for epilepsy, as described in Listing 11.02.

## V.    Plaintiff's Alternative Motion for Sentence Six Remand

Since plaintiff filed this action, he has received a fully favorable decision and has been found disabled since April 1, 2020. Plaintiff has filed an Alternative Motion for Sentence Six Remand. ECF 26. That motion is moot in light of this court's decision to reverse and remand for immediate award of benefits.

**ORDER**

The Commissioner's decision is REVERSED and this matter is REMANDED for the

immediate award of benefits.  Plaintiff's Alternative Motion for Sentence Six Remand (ECF 26)

is MOOT.

DATED October 7, 2022.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge